**WO**

MGD

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Julie Georgatos,

Plaintiff,

v.

State of Arizona, et al.,

Defendants.

No.  CV 22-00803-PHX-MTL (JZB)

**ORDER**

Plaintiff Julie Georgatos, who is represented by counsel, brought this civil rights action pursuant to 42 U.S.C. § 1983 in the Maricopa County Superior Court, and Defendants removed the action to this Court.  (Doc. 1.)  Before the Court is Plaintiff's Motion for Summary Judgment Re Collateral Estoppel and/or Res Judicata.  (Doc. 20.)

**I.    Background**

Plaintiff brought this action as the surviving parent of Austin Georgatos ("Austin") and as the personal representative of Austin's estate.  (Doc. 1-1 at 24.)  Plaintiff names as Defendants the State of Arizona, former Arizona Department of Corrections, Rehabilitation and Reentry ("ADCRR") Director David Shinn, Arizona State Prison Complex ("ASPC")-Lewis Warden James Kimble, former ADCRR contracted healthcare provider Centurion of Arizona, LLC ("Centurion"), Morey Unit Corrections Officers I-V, John Does I-V, Jane Does I-V, ABC Corporations I-X, and XYZ Limited Partnerships I-X.[1]  (*Id.* ¶¶ 4-14.)

---
[1] Plaintiff sues Defendant Shinn in his official capacity.  Defendant Shinn stepped

Plaintiff alleges the following.  Austin died on January 28, 2021, at the age of 20, while a prisoner in the custody of the ADCRR.  (*Id.* ¶ 3.)  Austin entered ADCRR custody several weeks earlier with an active diagnosis of schizophrenia with suicidal ideation and a mental health history lasting more than half his life.  (*Id.* ¶¶ 28, 32.)  Austin's anti-psychotic medication was abruptly discontinued upon his admission to ADCRR, he was not evaluated by Centurion personnel working at ASPC-Lewis after his admission there, he was not placed in a Behavioral Health Unit with a high visibility cell area and was not monitored at 10- or 30-minute intervals, as required for prisoners under mental health precautions or suicide watch, and Austin was last observed alive an hour and 20 minutes before he was found dead by hanging.  (*Id.* ¶¶ 33-35, 38-41.)  Plaintiff alleges that these failures were a significant cause of Austin's death.  (*Id.* ¶¶ 37-39, 42, 44.)

Plaintiff asserts claims against all Defendants in Count One (negligence), Count Two (medical negligence), and Count Four (negligent hiring, training, and supervision).  Count Three asserts a claim for a violation of Austin's Eighth Amendment rights, apparently against all Defendants.  Count Five asserts a claim against Defendants State of Arizona, ADCRR Director Shinn, Warden Kimble, and Centurion under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978) for alleged "policies of deliberate indifference to inmate acute mental health crises."  Plaintiff seeks damages, costs, and attorneys' fees.

Plaintiff now moves for summary judgment based on "res judicata and/or collateral estoppel to bar re-litigation of the issues and claims already presented and decided in *Parsons v. Ryan*, CV 2:12-cv-00601-ROS ('*Parsons*')."  (Doc. 20 at 1.)

**II.    Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The

---

down as ADCRR Director in January 2023.  Under Federal Rule of Civil Procedure 25(d), when a public officer sued in an official capacity resigns, the successor is automatically substituted as a party, and a court may order substitution at any time.  The Court will substitute Thornell as a Defendant as to the official capacity claim.

movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything.  *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor.  *Id.* at 255.  The court need consider only the cited materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3).

III.   **Relevant Facts**[2]

A.    **Austin's Incarceration at ADCRR**

On January 14, 2021, Austin was transferred to the ASPC-Lewis from the Maricopa County Jail.  (Doc. 21 ¶ 28.)  Upon intake, Austin received an initial mental health

---

[2] The relevant facts are taken from Plaintiff's Statement of Facts (Doc. 21), Defendants' Controverting Statement of Facts (Doc. 32 at 1-4), Defendants' Statement of Facts (Doc. 32 at 4-60), and Plaintiff's Response to Defendants' Separate Statement of Facts (Doc. 38).

assessment that lasted approximately five minutes.  (*Id.* ¶ 29.)  It was determined that Austin had recently been on medication for anxiety and depression while in jail, which he had discontinued two weeks previously.  (*Id.* ¶ 31.)  The medical form for the encounter states "Patient reports he has no further questions or concerns at this time and refused to continue the encounter. Future and goal oriented. Calm. Denied current DTS/SI/DTO/AVH. Good hygiene."[3]  (Doc. 21-8 at 4.) The assessment states "No emergent Mental Health needs.  Inmate informed of how to access Mental Health services (HNR)."  (*Id.* at 6.)  In a Health Needs Request ("HNR") dated January 25, 2021, Austin wrote "I need to see a psych doctor about the voice I am hearing in my head. They returned since I stopped taking my medications."  (Doc. 21-9 at 2.)  The response by RN B. Tomanek is time stamped at 6:22 pm on January 27, 2021 and states, "scheduled on nurses line."  (*Id.*)

On January 28, 2021, at 0022 a.m., Austin was found by correctional staff with a sheet around his neck.  (Doc. 32 at 12 ¶ 53.)  Following Austin's death, the ADCRR Mortality Review Committee's report noted that Austin's transfer summary from the Maricopa County Jails did not list any medications, that sufficient care was not offered/provided to Austin for Mental Health Issues, and that Austin's death was "possibly avoidable"; under "contributing cause analysis," the report remarked "failure to recognize symptoms or signs" and "delay in access to care."  (*Id.* ¶¶ 54-58.)

**B.** *Parsons* **Class Action**

"On March 22, 2012, a putative class action Complaint was filed in the United States District Court for the District of Arizona by several inmates housed at ASPC facilities, styled *Parsons v. Ryan*, Case No. 2:12-CV-00602-PHX-ROS" against then ADCRR Director Charles Ryan and Richard Pratt, the Interim Division Director of Health Services. (Doc. 32 at 5 ¶ 5.)  The State of Arizona and Centurion were not named defendants in *Parsons*.  (*Id.* at 6 ¶ 7.)  The *Parsons* Complaint sought declaratory and injunctive relief

---

[3] The parties dispute the opposing parties' characterizations of Austin's medical records, so the Court cites to the records themselves.

and alleged systemic policies/practices governing the provision of medical, dental, and mental health care.  (*Id.* ¶¶ 8-9.)

In certifying the *Parsons* class, the District Court determined that "the question common to all members of the Class and the Subclass is whether Defendants' practices are deliberately indifferent to inmates' health and safety in violation of the Eighth Amendment and subjection to unconstitutional conditions of confinement in isolation units." (Doc. 21-2 at 12.)  The *Parsons* court noted that the commonality and typicality requirements of the class members was based on "expos[ure] to a substantial risk of serious harm, irrespective of what their individual health care needs or circumstances may be," and the court explained that "certification of this class does not require a merits-based inquiry to determine membership."  (Doc. 32 at 7 ¶¶ 13-14.)  The court also noted that "[i]t matters not that each inmate may suffer from different ailments or require individualized treatment" because "when seeking only injunctive relief the constitutional injury is the exposure to the risk of harm."  (*Id.* ¶ 15.)

The *Parsons* court certified a Class and Subclass under Rule 23(b)(2) and defined the Class as "All prisoners who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practices of the ADC."  (Doc. 21-2 at 23.)  The court certified the class as to ten alleged practices, including "[f]ailure to provide mentally ill prisoners medically necessary mental health treatment (i.e. psychotropic medication, therapy, and inpatient treatment)" and "[f]ailure to provide suicidal and self-harming prisoners basic mental health care."  (*Id.*)

The Ninth Circuit Court of Appeals affirmed the district court's order granting class certification in *Parsons*, observing that "[t]he Complaint does not allege that the care provided on any particular occasion to any particular inmate (or group of inmates) was insufficient, but rather that ADC policies and practices of statewide and systemic application expose all inmates in ADC custody to a substantial risk of serious harm." (Doc. 32 at 7 ¶ 18.)  The Ninth Circuit further stated that the "inquiry does not require us to determine the effect of those policies and practices upon any individual class member (or

class members) or the undertake any other kind of individualized determination." (*Id*. at 8 ¶ 19.)

A 15-day bench trial in *Parsons* began on November 1, 2021, and the court issued its Findings of Fact and Conclusions of Law on June 30, 2022, finding that the *Parsons* defendants violated the prisoners' constitutional rights and finding in favor of the *Parsons* plaintiffs in Counts One, Two, Four, and Five.  (Doc. 21 ¶¶ 15-17.)  The *Parsons'* Order found that

> this case raises the question of whether Defendants' policies and practices create a substantial risk of harm to all prisoners. As the Ninth Circuit stated when affirming class certification: The cases cited in the defendants' briefs, many of which involve individuals challenging particular instances of medical treatment or conditions of confinement, confirm that they (erroneously) view the plaintiffs' claims as ultimately little more than a conglomeration of many such individual claims, rather than as a claim that central policies expose all inmates to a risk of harm.

(Doc. 32 at 10 ¶ 38.)  To demonstrate this point, the Order refers to named plaintiff Kendall Johnson and states that the case "[did] not turn on whether Ms. Johnson was mistreated. Rather, the question is whether the policies and practices create a risk of harm to Ms. Johnson and all other prisoners."  (*Id*. at 11 ¶ 39.)

Among the overall findings by the *Parsons* court were that the defendants "fail[ed] to provide timely access to healthcare," had "insufficient health care staffing," "failed to provide me[nt]ally ill prisoners with necessary mental health treatment," and "fail[ed] to provide suicidal and self-harming prisoners basic mental health care."  (Doc. 21 ¶ 18.)  The court further stated:

> Defendants have failed to provide, and continue to refuse to provide, a constitutionally adequate medical care and mental health care system for all prisoners. Defendants' health care system is plainly grossly inadequate. Defendants have been aware of their failures for years and Defendants have refused to take necessary actions to remedy the failures. **Defendants' years of inaction, despite Court intervention and**

**imposition of monetary sanctions, establish Defendants are acting with deliberate indifference to the substantial risk of serious harm posed by the lack of adequate medical and mental health care affecting all prisoners.**

(*Id.* ¶ 20 (emphasis in original).)

The court's order in *Parsons* specifically cited to Austin's case, finding that Defendants acted with deliberate indifference and violated Austin's Eighth Amendment rights by providing "an initial incompetent assessment upon arriving at prison," wrongly assessing Austin as having "no emergent [mental health] issues" after a five-minute assessment, and not scheduling subsequent mental health appointments. (*Id.* ¶¶ 21-24.) The *Parsons* court found that although Austin requested mental health care, he was never seen by health care staff, and, instead, committed suicide three days later. (*Id.* ¶ 25.) The *Parsons* order states:

> The inadequate intake screening was far too brief, likely as a result of inadequate staffing. In addition, inadequate follow-up based on the reports at intake and the significant delay in care after reporting severe psychiatric symptoms contributed to [Austin's] death.

(*Id.* ¶ 26.)

Defendants dispute Plaintiff's paragraphs 21-25 and Plaintiff's characterization of the *Parsons* court's findings with respect to Austin's case, and Defendants cite to their Statements of Fact paragraphs 36-39 as support. (Doc. 32 at 3 ¶¶ 21-25.) Defendants assert that the June 30, 2022 *Parsons* order included references to individual prisoners whom Dr. Stewart (Plaintiff's expert) had "provided a review of" in his Declaration, and Austin's case was included as one such reference in the order. (Doc. 32 at 10 ¶ 36.) Defendants contend that the reference to Austin in the June 30, 2022 *Parsons* order is not a legal finding in Austin's/Plaintiff's favor for any alleged deliberate indifference or Eighth Amendment violation, is not a legal finding that Austin experienced an initial incompetent examination or that he was wrongly assessed, and cannot operate as a legal finding in Plaintiff's favor because the June 30, 2022 Order, by its own terms, did not apply to individual claims. (*Id.* ¶ 37.) Plaintiff responds that Austin's specific case was referenced under the section of

Dr. Stewart's Declaration titled "Inadequate Treatment for Suicidal Prisoners," and that the court's order states, "Inadequate mental health care staffing is demonstrated in the records of prisoners who died by suicide in recent years," which Plaintiff contends is a court finding of a violation of Austin's constitutional rights.  (Doc. 38 ¶¶ 36-37.)

The parties dispute whether Austin was a member of the plaintiff class in *Parsons*. (Doc. 21 ¶ 9; Doc. 32 at 3 ¶ 9.)  Defendants contend that "Plaintiff has not provided admissible evidence of class membership," to which Plaintiff responds that Austin is a class member "by virtue of being an inmate in Arizona Prison Complex that is subjected to the harmful policies and procedures that were found [to] be in violation of inmate's constitutional rights.  His case is also a specific case of how the policies and procedures caused harm."  (Doc. 32 ¶ 43; Doc. 38 ¶ 43.)  Under the basic terms of the *Parsons* class, Austin was a member of the certified Class in *Parsons* because he was incarcerated within ADC (now ADCRR), and he was subjected to the medical and mental health policies and practices of the ADC.

### C.    Judgment in *Parsons*

The parties' briefing on the Motion for Summary Judgment was complete on December 15, 2022, when Plaintiff filed her Reply.  On April 7, 2023, the *Parsons'* court issued an Order and Permanent Injunction and directed the Clerk of Court to enter judgment in favor of the plaintiffs, which the Clerk entered that same day.  (Docs. 4410, 4411 in *Parsons*, now renamed *Jensen v. Thornell*, CV 12-00601-PHX-ROS.)

### IV.    Discussion

As an initial matter, Defendants argue that Plaintiff's Motion fails because the claims in the two cases are not identical and that Plaintiff here asserts state law claims of negligence, medical negligence, and negligent hiring, training, and supervision, which were never asserted in *Parsons*.  (Doc. 31 at 7.)  Plaintiff replies that her three state law claims are not subject to collateral estoppel and that her Motion does not argue these claims were litigated in *Parsons*.  (Doc. 37 at 3.)  Plaintiff asserts that the issue from *Parsons* that is subject to collateral estoppel in this case is:

<blockquote>
Whether the State of Arizona and its agents acted with the deliberate indifference and violated inmates' constitutional rights in providing mental health care to Plaintiffs and Class Member Plaintiffs, including Austin Georgatos.
</blockquote>

(*Id.*)

Although not so defined in her Motion or even clearly in her Reply, it appears to the Court that Plaintiff is arguing that collateral estoppel and/or res judicata applies only to her claim in Count Three that Defendants violated Austin's Eighth Amendment rights.  It does not appear that Plaintiff is arguing that collateral estoppel applies to her *Monell* claim in Count Five that the State of Arizona, ADCRR, and Centurion had deliberately indifferent policies because there is no mention of policies in her definition of the issue in her Reply. Therefore, the Court will only consider whether Plaintiff's Counts Three is subject to either collateral estoppel or res judicata.

### A.    Collateral Estoppel

Collateral estoppel bars re-litigation of issues that have been previously decided by a valid and final judgment.  The party asserting collateral estoppel "bears the burden of showing with clarity and certainty what was determined by the prior judgment."  *Clark v. Bear Stearns & Co., Inc*., 966 F.2d 1318, 1321 (9th Cir. 1992).  "It is not enough that the party introduce the decision of the prior court; rather, the party must introduce a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated."  *Id*. (quoting *United States v. Lasky,* 600 F.2d 765, 769 (9th Cir.), *cert. denied,* 444 U.S. 979 (1979)).

Collateral estoppel applies when "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits."  *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012) (citations omitted), *as amended* (May 3, 2012).

. . . .

. . . .

1

### 1.      Identity of Issues

Plaintiff argues that the issue in both cases is identical because the *Parsons* Complaint asked the court to find that the "acts, omissions, policies, and practices of Defendants, and their agents . . . and all persons acting in concert with them . . . described herein are in violation of the rights of prisoner Plaintiffs and the classes they represent under the Cruel and Unusual Punishments Clause of the Eighth Amendment," and Plaintiff here is asking a jury to decide "whether the State of Arizona and its agents acted with deliberate indifference and violated Austin's constructional [sic] rights."  (Doc. 20 at 10.)

Defendants argue the issues are not identical because *Parsons* "was explicitly limited to systemic issues regarding policies and procedures" and "clearly and unambiguously excluded findings as to any individual inmate."  (Doc. 31 at 8.)  Defendants also argue that the *Parsons* proceeding did not address the specific inquiries required of an Eighth Amendment claim such as whether Austin had a serious medical need, medical staff's awareness of that need, the extent of any treatment, any delays in treatment, and the extent of any harm or injury sustained.  (*Id.* at 8-9, citing *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006), *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).)  Defendants argue these questions "were relegated as unnecessary in *Parsons* because the issues were limited to ADCRR's alleged deliberate indifference to systemic policies and practices that exposed all inmates to a substantial risk of harm generally."  (*Id.* at 9.)  Defendants contend that Plaintiff's Complaint implicitly acknowledges the differences in these cases by alleging in the Complaint that Defendants "directly and proximately caused physical and emotional suffering to Decedent Austin Georgatos prior to his death, and directly and proximately caused the death of Plaintiff's Decedent [ ], directly and proximately causing [Austin's] injuries and damages," which shows Plaintiff is faced with proving actual harm and causation thereof.  (*Id.*)

Both cases involve alleged violations of prisoners' Eighth Amendment rights to medical care, but *Parsons* was limited to systemic issues involving ADCRR's policies and practices and specifically eliminated the care provided to any individual prisoner from the

class definition and, as the Ninth Circuit stated, the inquiry in the case "does not require us to determine the effect of those policies and practices upon any individual class member (or class members) or to undertake any other kind of individualized determination." Although the plaintiffs in *Parsons* used an expert's testimony regarding the alleged lack of care for Austin as an example of deficiencies in the medical system, Austin's care was not the issue before the court. Therefore, the issues in *Parsons* and this case are not identical.

## 2.    Actual Litigation of the Issue

"Unlike claim preclusion, also known as res judicata, issue preclusion requires that an issue must have been 'actually and necessarily determined by a court of competent jurisdiction' to be conclusive in a subsequent suit." *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979).)   To determine if an issue was actually litigated, the courts look "to the record of the prior proceeding to determine whether an issue was in fact raised, contested, and submitted for determination." *Id.* "An issue is actually litigated [w]hen [it] is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *Wabakken v. Cal. Dep't of Corrs. & Rehab.*, 801 F.3d 1143, 1148 (9th Cir. 2015).

Plaintiff argues that the issue before this Court was actually litigated in *Parsons* because the parties in *Parsons* litigated for over 10 years "whether the State of Arizona and its agents acted with the deliberate indifference and committed constitutional violations of Arizona inmates." (Doc. 20 at 11.) Plaintiff contends that the issue of Austin's suicide was actually litigated because it "was a specific example of how Defendants acted with deliberate indifference and violated Austin's constitutional rights." (*Id.*)

Defendants respond that Plaintiff has not pinpointed the issues litigated in *Parsons* or provided the record of the prior litigation and it would be nonsensical to apply Judge Silver's findings of fact to this action because the *Parsons* record contains "repeated insistence that the scope of the Order did not include the individualized care or harm to a particular inmate." (Doc. 31 at 10.) Defendants argue that Austin was mentioned on "three

brief occasions during trial testimony" in *Parsons*, and Austin was discussed in less than four pages out of hundreds of pages of expert opinions submitted to the court.  (*Id*.)

The Court finds that the references to Austin in the *Parsons'* litigation were used as examples of deficiencies in the ADCRR healthcare system that were identified by an expert, but the issue of Austin's condition, the alleged lack of adequate care, his housing, and cause of death were not actually litigated in *Parsons*.  As Plaintiff herself says in her Reply, "Austin's death was used [as] an example of how the State and its agents violated inmates' constitutional rights."  (Doc. 37 at 6.)  Again, an example used to illustrate deficiencies in a system of healthcare does not amount to actual litigation of that example.

### 3.    Full and Fair Opportunity to Litigate

Plaintiff argues that the State of Arizona and its agents "had every opportunity to present their case and support their defenses" in *Parsons*, that the *Parsons* court evaluated all the evidence, made its determination, and found in favor of the plaintiffs.  (Doc. 20 at 12.)

Defendants respond that even assuming for the sake of argument that Austin's care was actually at issue in *Parsons*, "there is no doubt that the procedures at issue here will be vastly different and could raise the possibility of a different result" due to the individual nature of this action versus the class nature of *Parsons*.  (Doc. 31 at 11.)  Defendants note that the *Parsons* court "repeatedly announced the individual merits were not at issue" and that Centurion was not a party to *Parsons* and did not have the ability to call its own witnesses to discuss Austin's care, Austin's medical records from jail, his symptomology, his prescription history, the triage of HNRs, or cross examine the plaintiffs' experts or otherwise direct the litigation.  (*Id*. at 11-12.)

The Supreme Court has granted federal courts broad discretion in determining when to apply offensive collateral estoppel, observing that "offensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does" and may be unfair to a defendant such as "where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result."

*Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979) ("If a defendant in the first action is sued for small or nominal damages, he may have little incentive to defend vigorously, particularly if future suits are not foreseeable.").  In deciding whether a party has had a "full and fair" opportunity to litigate, the Ninth Circuit has held that a court "must make a practical judgment based on at least two considerations": (1) a comparison of the procedures in the prior and subsequent actions; and (2) a consideration of "the parties' incentives to litigate in the two actions."  *Maciel v. Comm'r*, 489 F.3d 1018, 1023 (9th Cir. 2007) ("If a party had good reason not to contest an issue vigorously during the first action and did not, in fact, vigorously contest the issue, that party generally should be entitled to relitigate the issue during the second action.").

Here, the *Parsons* court made clear that the merits of individual prisoners' medical care was not at issue.  Therefore, the defendants in *Parsons* did not have incentive to fully litigate the merits of Plaintiff's claim in that action when they were defending against a class action involving thousands of prisoners.

**4.     Necessity of the Issue to the Merits in *Parsons***

Plaintiff argues that the determination of the issue of whether the State of Arizona and its agents acted with deliberate indifference and violated inmates' constitutional rights was necessary for the court to find in favor of the plaintiffs and class member plaintiffs and grant injunctive relief.  (Doc. 20 at 12.)  Plaintiff argues that the very same issues are necessary for a determination in favor of Plaintiff here and for an award of civil damages. (*Id.*)  Defendants respond that the *Parsons* Order notes that Dr. Stewart reviewed multiple cases and provided summaries thereof, but the inclusion of Austin's summary in the *Parsons* Order does not support that it was necessary to the outcome as compared to any other individual prisoner commented on in the order.  (Doc. 31 at 13.)  The inclusion of Austin as an example of a prisoner receiving inadequate care was not necessary to the merits of the issue in *Parsons*.

Based on the above analysis, Plaintiff has not met her burden of showing that collateral estoppel bars this litigation.

**B.      Res Judicata**

"The doctrine of *res judicata* provides that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action, and is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdiction." *Headwaters, Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 (9th Cir. 2005).  The doctrine pertains to any claims that were raised, or could have been raised, in a prior action, including claims pursuant to § 1983.  *In re Nat'l Collegiate Ath. Assoc. Ath. Grant-in-Aid Cap Antitrust Litigation*, 958 F.3d 1239, 1255 (9th Cir. 2020); *Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007); *W. Radio Servs. Co., Inc., v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997).  It is irrelevant whether the new claims "were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003).

"The elements necessary to establish res *judicata* are: (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Hells Canyon Pres. Council v. U.S. Forest Serv.,* 403 F.3d 683, 686 (9th Cir.2005).

**1.      Identity of Claims**

Plaintiff argues that the claims in both cases are identical in that both asked "whether the Defendants acted with deliberate indifference and violated Austin's constitutional rights by failing to provide adequate mental health care and failing to respond to Austin's mental health needs which caused his death." (*Id*.)  Plaintiff also argues that the claims in both cases "arise out of the same transactions – Austin's suicide." (Doc. 20 at 14.)

Defendants respond that res judicata does not apply to events post-dating the filing of the initial complaint, and, as applied here, the operative Complaint in *Parsons*, filed on March 22, 2012, was never amended, Austin was never added as a named plaintiff, and Austin was transferred to an ASPC facility in January 2021, nine years after the operative Complaint was filed.  (Doc. 31 at 14.)

Courts use the following criteria to evaluate whether claims are identical:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Howard v. City of Coos Bay*, 871 F.3d 1032, 1039 (9th Cir. 2017).  The Ninth Circuit has held that the fourth criterion is most important, and "that for purposes of federal common law, claim preclusion does not apply to claims that accrue after the filing of the operative complaint."  *Id*.

Applying these rules here, the claims in *Parsons* are not identical because Austin was not a prisoner in ADCRR at the time the operative Complaint was filed in *Parsons*. Moreover, the claim in *Parsons* addressed a systemic violation of all ADCRR prisoners' right to adequate health care whereas the claim in the present case involves an alleged violation of Austin's Eighth Amendment right to adequate healthcare.  Accordingly, there is no identity of claims.

### 2. Final Judgment on the Merits

Plaintiff argues that the *Parsons* Order dated June 30, 2022 is a valid final judgment because it "deposed [sic] of all causes of action in the case."  (Doc. 20 at 15.)  Defendants argue the June 2022 Order does not constitute a valid and final judgment under Rule 58 of the Federal Rules of Civil Procedure.  (Doc. 31 at 15.)

As noted, the parties' briefing on the Motion for Summary Judgment was complete on December 15, 2022, before judgment was entered, but on April 7, 2023, the *Parsons'* court issued an Order and Permanent Injunction and directed the Clerk of Court to enter judgment in favor of Plaintiffs, which the Clerk entered Judgment that same day. Therefore, there is a final judgment on the merits in *Parsons*.

### 3. Privity Between Parties

Plaintiff argues that the parties in *Parsons* and this case are the same because Austin was a member of the *Parsons* class and is a party to this action through his Estate, and Julie

Georgatos, as a statutory beneficiary, is in privity with Austin.  (Doc. 20 at 14.)  Plaintiff also argues that the Defendants in *Parsons* and this action are the same.  (*Id*.)

Defendants respond that Plaintiff has not provided evidentiary support or argument that Austin was a *Parsons* class member, and Plaintiff's Motion contains no evidence supporting that Centurion is "exactly the same" as any defendant in *Parsons*.  (Doc. 31 at 16-17.)

The Court has already determined that Austin was a class member in *Parsons*.  But privity is nevertheless lacking here because Centurion was not a defendant in the *Parsons* litigation.  In addition, Plaintiff has multiple unnamed John and Jane Doe Defendants and unnamed corporations and limited partnerships, who were not parties to the *Parsons* litigation.

Based on the above, res judicata does not bar the litigation of Plaintiff's Eighth Amendment claim in this action.

**IT IS ORDERED:**

(1)    Pursuant to Federal Rule of Civil Procedure 25(d), Ryan Thornell is substituted for David Shinn **in his official capacity only**.  The Clerk of the Court must update the docket accordingly.

(2)    The reference to the Magistrate Judge is **withdrawn** as to Plaintiff's Motion for Summary Judgment (Doc. 20), and the Motion is **denied**.

Dated this 27th day of April, 2023.

Michael T. Liburdi
United States District Judge